UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELIO MULAS and
LUCIA MULAS,

      Plaintiffs,

v.                                                    Case No.:  2:24-cv-534-SPC-DNF

WESTCHESTER SURPLUS
LINES INSURANCE COMPANY,

      Defendant.

---

## <u>OPINION AND ORDER</u>

Before the Court is Defendant Westchester Surplus Lines Insurance Company's Motion for Summary Judgment.  (Doc.  56).  Plaintiffs Elio and Lucia Mulas responded (Doc. 63),[1] and Defendant replied (Doc. 67).  For the below reasons, the Court grants the motion.

## Background

This breach of contract action arises from windstorm damage Plaintiffs' commercial property sustained during Hurricane Ian.  (Doc. 6).  The dispute is twofold.  Plaintiffs believe Defendant wrongfully denied coverage for roof damage and various interior damages to the property.  And for certain exterior

---

[1] M.D. Fla. Local Rule 3.01(c) provides that a response brief must not exceed twenty pages. Plaintiffs' response is thirty pages.  But given the Court grants Defendant's motion anyway, the Court overlooks this violation.

damage that Defendant covered, Plaintiffs allege Defendant's actual cash value ("ACV") payment did not reflect the fully insured loss.[2]

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show a lack of genuinely disputed material fact. *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991). If carried, the burden shifts to the nonmoving party to point out a genuine dispute. *Id.* At this stage, a court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002).

## Analysis

Defendant's summary judgment motion is straightforward. It argues Plaintiffs' roof damage was not covered under the policy because Hurricane Ian

---

[2] Plaintiffs' response makes clear they only seek ACV in this case. (Doc. 60).

did not cause the damage, and the interior damages fell within a policy limitation because the rain that caused such damages did not enter the property through a storm-created opening.  As for the ACV, it argues Plaintiffs submitted no evidence to rebut the ACV amount paid.

## A.    Roof Damage

Plaintiffs sought coverage for damage to their roof.  Defendant denied coverage because its retained engineer—Stephens Engineering Consultants, Inc.—determined the roof damage was not caused by wind from Hurricane Ian.[3]   Seeking summary judgment, Defendant argues Plaintiffs have no evidence showing Hurricane Ian caused the roof damage.  It points to the report of Plaintiffs' retained expert, Bradley Crowson, P.E. from Tierra, Inc. In his report, Crowson opines in pertinent part:

> **Roof Discussion**
>
> Wind damage to a modified bitumen roofing system consists of missing, torn, or creased areas of modified bitumen, as well as abrasions and punctures from wind-borne debris, and is concentrated, or is more substantial, along the eaves of the roofing surfaces. **At the time of Tierra's site visit, no wind damage was observed along the roofing surface.** It should be noted that a roof permit was issued on February 20, 2024 at the subject property.  Review of historical aerial imagery shows that the roofing surface was re-roofed between January 2, 2024 and November 27, 2024.

---

[3] It found the damage was from other excluded causes such as "moisture and/or air due to historical and ongoing penetration through unsealed openings as well as hidden deficiencies in the roofing membrane," thermal movement, and deterioration due to long term exposure to the elements.  (Doc. 56-5 at 5; Doc. 63-3).

> A review of historical aerials from EagleView and Nearmap, and images taken by Stephens on February 21, 2023, **show no apparent wind damage to the roofing surface. Therefore, no wind damage was apparent to the roofing surface from Hurricane Ian.**

(Doc. 56-8 at 3) (emphasis added). Later in the report's conclusion, Crowson recaps:

- At the time of Tierra's site visit, **no wind damage was observed along the roofing surface.** It should be noted that a roof permit was issued on February 20, 2024 at the subject property. Review of historical aerial imagery shows that the roofing surface was re-roofed between January 2, 2024 and November 27, 2024.

- No wind damage was apparent to the roofing surface from Hurricane Ian in reviewed historical images.

(*Id.* at 5) (emphasis added). Crowson's expert report is clear: he observed no damage to the roofing surface caused by Hurricane Ian. Plaintiffs produce no other evidence suggesting the hurricane caused such damage. So they cannot show Defendant breached the policy by denying coverage.

**B.    Interior Damage**

Defendant denied Plaintiffs coverage for interior ceiling moisture damage, citing a special form limitation in the policy. The limitation provides that Defendant will not pay for the loss of or damage to "[t]he interior of any building or structure . . . caused by or resulting from rain . . . whether driven by wind or not, unless . . . [t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters[.]"

4

(Doc. 56-2 at 44).  Put simply, the policy only provides coverage to the interior of the home if the property's exterior first sustains covered windstorm damage that creates an opening allowing the water intrusion.  Defendant asserts Hurricane Ian did not create such an opening, as shown by the lack of wind damage to the roof, so Plaintiffs' interior damage is not covered.

Plaintiffs again unsuccessfully point to Crowson's report and affidavit to support coverage.  Crowson opined in his report: "No wind damage was apparent along the roofing surface.  Therefore, it is Tierra's opinion that the moisture stains observed along the ceiling are the result of wind-driven rain associated with Hurricane Ian through the roofing surface." (Doc. 56-8 at 3, 5; *see also* Doc. 63-2 ¶ 5).  This does not help Plaintiffs' case.  Crowson again recognizes a lack of wind damage to the roof.  And damage resulting from wind-driven water intrusion through the roof is not enough.  Hurricane Ian must have caused the opening in the roof that permitted the intrusion.  As discussed, Plaintiffs have produced no evidence suggesting Hurricane Ian caused any damage to their roofing surface. So they have not shown their interior damage was covered under the policy.

Trying to avoid this conclusion, Plaintiffs cite testimony from Crowson's affidavit, which merely reiterates his original opinion that wind-driven rain from Hurricane Ian caused the interior moisture.  (Doc. 63-2).  But doubling down on that opinion still does not establish the critical component of a storm-

created opening.  And he otherwise offers mere speculation as to what caused the intrusion.  For instance, he states:

> Although no torn or blown-off membrane was visible in the photographs, the absence of a torn membrane does not rule out storm-caused water intrusion.  Wind-driven rain from a severe hurricane such as Hurricane Ian can enter through compromised membrane seams, flashing transitions, and other roofing vulnerabilities without causing visible blow-off.

(Doc. 63-2 ¶ 7).  Simply asserting that wind-driven rain *can* enter the home in a certain manner is not the same as opining that it *did*.  Such speculation is insufficient to defeat summary judgment.  *See Gadsby v. Am. Golf Corp. of California*, 557 F. App'x 837, 840 (11th Cir. 2014) ("We have said repeatedly that speculation about a fact or result is insufficient to survive summary judgment."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[A] party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations."); *Bell v. Swift Adhesives, Inc.*, 804 F. Supp. 1577, 1579 (S.D. Ga. 1992) ("Theoretical speculations, unsupported assumptions, and conclusory allegations advanced by an expert are not entitled to any weight when raised in opposition to a motion for summary judgment.").

Nor does Plaintiffs' attempt to create a factual dispute work.  Crowson asserts in his affidavit: "My findings differ from those of Stephens Engineering. Stephens attributes the moisture staining to 'historical and ongoing leaks'

unrelated to Hurricane Ian.  I do not concur with that conclusion." (Doc. 63-2 ¶ 8).  Plaintiffs believe the experts' difference in opinion creates a factual dispute.  But the ultimate issue is whether Hurricane Ian caused roof damage that permitted the water intrusion.  Plaintiffs have not shown any roof damage, and Crowson did not observe any.  So disputing whether historical ongoing leaks caused the interior ceiling damage is immaterial.  *See Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted.").  So the Court grants Defendant summary judgment on this claim.

## C.    Exterior Damages

Plaintiffs seek coverage for damage to various exterior items. Defendant's field adjuster prepared an estimate, and Defendant issued payment based on this estimate minus the applicable deductible.  Plaintiffs argue this payment did not sufficiently cover their loss.  (Doc. 63 at 22).  When an insured claims the insurer's payment is inadequate, the insurer has the initial burden to show that it paid "at least the actual cash value of the insured loss."  *Homeowners Choice Prop. & Cas. Ins. Co., Inc. v. Clark*, 410 So. 3d 99, 111 (Fla. Dist. Ct. App. 2025).  "But once the insurer provides an ACV estimate and pays that sum, the burden shifts to the insured to demonstrate that the payment did not reflect the fully insured loss."  *Id.* at 111–12.

Defendant argues Plaintiffs have not met their burden of showing it failed to pay ACV. ACV is replacement cost value ("RCV") minus depreciation. *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 443 (Fla. 2013). Plaintiffs submitted an estimate their public adjuster, Peninsula Public Adjusters, prepared. (Doc. 63-1). But in the estimate, the ACV and RCV are identical, and it values the depreciation at zero. (*Id.*). This is a problem for Plaintiffs.

Courts have found that when ACV and RCV in an estimate are identical, the estimate is really one for RCV, not ACV, because it did not account for depreciation. *See Metal Prods. Co., LLC v. Ohio Sec. Ins.*, No. 5:19-CV489-TKW-MJF, 2021 WL 1345525, at *2 (N.D. Fla. Apr. 12, 2021), *aff'd*, No. 21-11612, 2022 WL 104618 (11th Cir. Jan. 11, 2022) (explaining that, although the plaintiff's estimate included a column titled ACV, "it is undisputed that those amounts were not ACVs because they are the same as the corresponding amounts in the RCV column and the . . . estimate did not include any amounts for depreciation"). And without an ACV estimate, a jury cannot reasonably conclude "that the ACV of the covered loss exceeds the amounts already paid by Defendant." *Id.*; *see also Clark*, 410 So. 3d at 112 (explaining when the insured's estimate provides only for RCV, and the insured fails to present evidence challenging the insurer's ACV payout, "no breach of contract occurs when the insurer fails to pay monies under the insured's estimate"); *Citizens Prop. Ins. v. Salazar*, 388 So. 3d 115, 118 (Fla. Dist. Ct. App. 2023) (holding

8

that because the homeowner never submitted evidence of ACV, the jury could not parse the RCV estimate to determine ACV "without improper guessing and speculation"). Such is the case here.[4]

Plaintiffs' argument is unpersuasive. They assert their estimate does include an ACV; it just happens to be the same as the RCV. In other words, they maintain the lack of depreciation is intentional.[5] (Doc. 63 at 6, 14). This fails for at least two reasons. First, the estimate in *Metal Products* also included the same ACV and RCV with depreciation valued at zero. 2021 WL 1345525, at *2. But that court nevertheless found the insured failed to produce evidence of ACV. *Id.* Second, even assuming it is possible for RCV and ACV to be the same, Plaintiffs provide no evidence from their adjuster explaining the zero-value depreciation was intentional. *Cf. Pauly v. Hartford Ins. Co. of the Midwest*, No. 2:24-CV-874-SPC-NPM, 2025 WL 1677514, at *5 (M.D. Fla. June 13, 2025) (finding a factual dispute existed when the plaintiff's adjuster

---

[4] Plaintiffs attach to their response another estimate prepared by Mrozek Services Group that properly accounts for depreciation. (Doc. 63-6). However, the estimate indicates Mrozek prepared it on March 11, 2025—over three years after the hurricane and almost a year after Plaintiffs filed this case. (*Id.*). Thus, the Mrozek estimate cannot establish a breach of the policy. *See Bailetti v. Universal Prop. & Cas. Ins. Co.*, No. 1D2024-1695, 2025 WL 2845101, at *3 (Fla. Dist. Ct. App. Oct. 8, 2025) (explaining that although the insureds provided ACV estimates at trial, the estimates were prepared years after the hurricane and after the lawsuit was filed, so the insureds "failed to show that as of June 2021, when they filed their breach of contract action, Universal had breached the insurance policy").

[5] This argument is disingenuous. Plaintiffs acknowledged their estimate's deficiency when they moved to voluntarily dismiss this case so they could rectify the ACV/RCV valuation issue. (Doc. 60).

testified that he intentionally applied minimal depreciation).  So the Court rejects these arguments.[6]

Ultimately, Defendant acknowledged coverage for the damaged exterior items and issued payment based on its adjuster's cash value determination. Plaintiffs did not provide a competing ACV estimate.  "While an insurer's unilateral determination of the cash value of a loss does not entitle it to summary judgment in the face of a competing estimate of damages, the insurer should not be deemed to have breached the contract where it accepted coverage and paid the only estimate it received of the actual cash value of the loss." *Goldberg v. Universal Prop. & Cas. Ins. Co.*, 302 So. 3d 919, 925 (Fla. Dist. Ct. App. 2020).  The Court thus grants Defendant summary judgment.

Accordingly, it is now **ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 56) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment for Defendant and against Plaintiff, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida this January 30, 2026.



SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

---

[6] Plaintiffs observe that Defendant's estimate only included RCV as well.  But Defendant only needs to show it paid "at least the actual cash value of the insured loss." *Clark*, 410 So. 3d at 111 (emphasis added); *see also* Fla. Stat. § 627.7011(3)(a) (the insurer must initially pay the ACV less any applicable deductible).  If Defendant paid Plaintiffs its estimated RCV (which is ACV before depreciation), it has inherently satisfied this burden.